I think have either of you gentlemen not been here before? If not, and I don't really, at least one of you I don't recognize, just a brief statement about our procedures here. Of course you know that technically each side gets 15 minutes, the case gets a half hour. You know anything about our division. You know that we are not married to that rule, and that we may be apt to keep you, not until you've had your fill, but until we've had ours. So maybe it's the same thing, who knows? At any rate, I think the appellant can reserve rebuttal time. That is commensurate with the nature of the case as well. With that, I will ask the both of you to identify yourselves for the record, if you're at the dais, you might want to mic your names into the record and the parties that you're representing. And then one of you will sit down and the other will proceed. Okay, good morning gentlemen, and we will now proceed when you're ready to begin. May it please the court, the trial court was wrong in this particular matter. The record is clear that Timothy Tatum did have an insurable interest in the property at the time of the fire. Timothy Tatum is asking that you reverse the finding of the trial court, granting some of the judgment for all state, and also I'm denying Timothy Tatum's 2-6-19 motion that all state lacked standing to challenge the June 23, 2005 deed that Tim Tatum received from his successor. Well, do you think we have jurisdiction to hear the standing issue since you did not designate that issue in your notice of appeal? That order as one, as an order being appealed from? I, as I stated in my reply brief, I cyclicate the Pat versus, I'll just strike that. I cyclicate the Bortel versus First Charter Service Corporation that this was a step in the procedural progression of the judgment that was appealed from. The record is clear that originally I filed a motion for 2-6-19 motion challenging the standing of all state accounts of the deed. I presume you're going to be presenting your views on the standing issue first since that is preliminary to whether we have any further business dealing substantively with the rest of the case. Well, I mean, I could if you wish me to. I mean, I was going to say regardless of whether it has the standing issue, I think Timothy Tatum still has an insurable interest in this property. Well, could I ask you, in the best possible light, what would you say Timothy Tatum's interest is? What would we call it? I would call it an owner. Yeah, you would say he just owns the property outright. He owns the property outright. Okay, well. And then if you don't, you don't, are you, while you float from ownership based on the quitclaim deed, which was the deed I think executed in March on the, at the time that the arrangement was made with Scrumpet. And the $11,000 was advanced to pay a rearage of the mortgage and something over $3,000 to pay taxes. First of all, let me ask you something about that. As far as the taxes are concerned, your opponent says it's not in the record. Oh, it is in the record. It's, it's in the, it's in the record. There's an exhibit about the, the taxes. Now, at that time, a couple of things happened. First, Scrumpet, are you representing the, well, I won't ask. How do you pronounce his name? Scroble. Scroble. Scroble or Scrobot? Scroble. Scroble. Okay. Scroble took his own mortgage from Murray. He took a mortgage for $11,000. The money that he advanced to pay off his portfolio. Right. And that was clearly designated as a security interest in the property. Okay. Then at, on that same date, Scroble tells Murray to execute a quit claim deed to Taylor, who you're representing here today. Correct. Okay. How is that explained? And then, and then Scroble executes a release. When does he do that of his own mortgage? After he gets the money back. He gets the money back at the, at the. After, after, after Taylor gets his own mortgage on the property based on his quit claim deed for $65,000. Correct. Which is a couple of months down the line. Correct. That's the title of our, the title. Now, how do you. Sorry. Just allow me to have this. Okay. Okay. Great. Thank you. Give it right back to you. How do you explain the inconsistency of having the owner of the property execute a mortgage as a mortgagor to Scroble as a mortgagee, and then quit claim the property almost simultaneously? At least it's in your interest to say it's simultaneous in responding to the consideration argument that your opponent tries to develop. Notice I said tries. That doesn't say, I'm not saying that it was successful necessarily. But it's in your interest to have them simultaneous so that they travel under the same consideration of the $11,000. Right? Yeah. What's the explanation for that? What kind of maneuver is that? Well, you know, I can't really explain. Well, I'd like to understand the reasonableness of this entire transaction as a transaction that is self-evidencing and a normal transaction on its face. There are maneuvers here that I don't even understand as a cover for an equitable mortgage or for anything else. If you can give me that rationale, it won't fall on deaf ears. The only rationale I have is the old addicts are wearing suspenders and a belt at the same time. They were, or Mr. Scroble was concerned that he would protect the $11,000 that he's advancing to Murray, the Murrays. And he also wanted to have the title to the property. And- But he doesn't get the title to the property. Kaylin gets the title to the property. Are they partners? They're partners. They're partners. And that's in the record. And that's in the record. And also, Mr. Kaylin- Well, isn't it also in the record that Scroble, but his name is spelled differently in the brief. It says T at the end. I don't know what his name is. But isn't it in the briefs that Scroble or Scrobot said that we did this on a number of occasions and if, you know, we paid off the mortgage and then the person defaulted, we would just take the property. Did he say that? I don't think- His agent. His agent. Did he say that at a deposition? You're talking about- Scroble. Scroble was never deposed in this case. The only one that was deposed- Tatum. Was Tatum in a sworn statement. Tatum did a sworn statement- All right. Now, is Tatum, by this time, is Tatum acknowledging the mortgage? I don't think he's acknowledging the mortgage. He wants a secured interest in the property. Let me finish on this one now. If he's taking a mortgage, or if the law for equity, I should say, recognizes this as an equitable mortgage, how does someone- how does the mortgagee foreclose and get that property? How do they take that property when there's a default? Well, I mean- Don't they do it pursuant to statutes? There's no right to foreclose one individual upon a mortgage of any kind. Is there? No, I mean- Don't you have to go into court to do that? You do, because the- My question on that, if I might rephrase that, because I have that. It's something that I thought I should get an answer to. Does an equitable mortgage require a foreclosure mechanism similar to a legal mortgage as opposed to equitable? Or does it travel through its own devices? I think it travels through its own devices. I think that the mortgage- In what case, what authority do you have that if there's an equitable mortgage created, that if the mortgagee defaults, that the mortgagee can simply just take the property- I'm sorry, the mortgagee can simply take the property from the mortgagee if there's a default. What would you have to say to that? Well, all the cases on equitable mortgages, the case that we cite, there's only one case that we cite. Well, you cite Robinson, you cite a number of cases. Three cases. I mean, but they don't exist on equitable mortgages. And it normally- Those cases don't deal with the foreclosure aspect. They don't deal with the foreclosure aspect. They don't deal with the foreclosure aspect. Well, what if an equitable mortgage can be foreclosed at the mortgagee's will for whether? What's the case like that? Well, there's- I think that you would say, if you'll allow me, Mr. Larson, and I'm going to throw that out so that we can get a response from your opponent if he cares to comment on it. You would say that an equitable mortgage is one that's treated in a court of equity as limiting the otherwise-tutitive vendee's rights. But that in the event of default, well, it's not even in the event of default, but that when it comes to foreclosure, even though there's an equity of redemption, there is a right to redeem here, basically, given on this mortgage, in this instance, within three years, that the then-putative vendee treats it as his property, pursuant to the quit-claim deed, with the vendor who is the equivalent of the equitable mortgagor being required to exercise her rights as contracted. So that in this particular event, your client would hope that even if it's an equitable mortgage, he keeps the property in the event that the murderer doesn't exercise her right to redeem within three years and pay back. And I would presume that that's where you would stand, that there is no foreclosure proceeding, because the deal is structured as an outright purchase, and that the rule against conveying title had not yet been enacted. That's where you would stand, I presume. Now, the question here, along those lines that I would ask you, is whether if what would happen in this particular case, had Murray exercised her right to redeem within three years, after your client obtained a $65,000 loan against this property, a legitimate, or I should say a legal, I won't use the term legitimate, since that's very much, that's the 800-pound gorilla in this room, you know? But what would have happened if she exercised her right to redeem when there was already an outstanding, what is it, acquired on August 30th? August 30th. Yeah, right. A $65,000 mortgage against this property with the Marquette Bank already acquired by your client. Would this redemption be subject to that mortgage?  Well, there are loose ends here, is what I'm pointing to. I mean, right now, this deal, which purports to be a complete deal, albeit designed to get your hands on distressed property or whatever, are designed for getting about any negative or positive extrapolations. Is there any insurable interest in the first instance? I mean, it's kind of what the Stroud Court did. Stroud Court said that this transaction is void. Not voidable, but void. Now, how do you respond to your opponent's claim that the giving of the deed as security for a mortgage is void from the beginning? Well, how I respond to that is the, it's, I've got two arguments for that. First of all, it's not, insurable interest is not really ascertained with property rights. I mean, mortgagees can have insurance. Yeah, that's a given. That's a given. We agree with you on that. So, I mean, that's one way. But the question I'm posing to you is this. How do you respond? Forgetting that, yes, a mortgagee can have an interest, insurable interest. The question is, if didn't the Stroud Court here find that the giving of the deed by this mortgage to Kate was void? Well, I mean, the. . . Can you. . . Well, I touched on that preliminarily. What did she base that on, as far as you know? Was there a law in effect at that time, or was she anticipating the MFW or whatever that was not yet in effect? If you look at her order, she uses the Mortgage Rescue and Fraud Act as her basis, do you think it's a public policy void? Is there any common law rule that would prohibit, or pre-existing statutory rule, that would prohibit using a conveying title as a means of getting a security interest? In my memory, that was the device in the days of the chattel mortgage, before the Uniform Commercial Code and before the various modifications to the common law were made to substitute security interest for conditional conveyance of title. Was there some rule, as far as you know? Because if you don't know, obviously I'm going to have to look to your opponent for an answer. I don't know any rule of law with that. All right. So you're saying that your second argument would then be that the trial court, and I think you put this in the brief, that she improperly tells the statute. She retroactively applies to this case. Correct. And I also think the statute has no bearing here, because the remedies in the statute, you have a right for rescission up until the time when the mortgage redemption period expires, or you have civil remedies under the Consumer Fraud Act by the Attorney General and the court. Well, doesn't that dovetail with your standing argument? And insofar as you're attempting to turn the carrier into a private attorney general, which is not, as far as you're concerned, a posture provided for it. That's my argument. I mean, third parties cannot use it. And I cite a lot of cases in my briefs about third parties who cannot use it for standing in a contract. I mean, I cite that normally in a contract, positive action standing is only the people in privity or intended third-party bad interest have standing to challenge the contract. But that's not true. You have the Brockett case and you have the Melrose Park case that deal with that issue as to whether a third party can avail itself of defenses that are ordinarily available to the two primary parties. Another way of looking at this, if you wish, is not to call it an issue of standing, but an issue of personal defenses. Is the equitable mortgage a personal defense available only as between the putative vendor and the putative Vendee, or is it also available to the public at large? And Melrose and Brockett are not categorical in restricting it to the parties or, for that matter, in making it available to third parties. Now, can you explain, can you reconcile the Melrose and Brockett case, which you cite, with their holding, with their holding, at least in the Melrose case, that's at 145 Eilat Third, the earlier case, that the fact, well, in the, let's go Brockett case first. The Brockett case is the medical bill, right? The medical, the chiropractor. Right, right, right. So that the insurance company can't reject a medical bill given to a plaintiff, given to an insured, by a chiropractor who is practicing illegally. Correct. Okay. They have no standing for that. And Brockett. On the other hand, in the Melrose case, the posture of the court was to allow the third party, the insurer, to take advantage of a defense that would not, that would seem to be personal between the, its insured and the other primary party. I'm having difficulty recalling. Melrose was the case for the owner. There's no doubt about that. Ownership belongs to the insurer. He had a contract to sell the home. The value was less. And then the insurance company tried to provide $65,000 for the sale of the home, and it was valued at $100,000. This was where the fire occurred before the closing, as opposed to occurring after the closing. So Justice Johnson makes a distinction between the right of the insurer, after the closing, to assert the rescindability of that contract on behalf of the vendee, as opposed to before the closing. But the various things discussed there include, first, was the act of which the carrier seeks to avail itself designed to protect the public or to protect only the vendees in these contexts? And, hell, that where it's not designed to protect the public, the insurance company can't avail itself. But on the other hand, if it has a direct barrier on the insurer's liability, then it can avail itself of that defense. Now, in this case, bottom line, doesn't the insurer have a right to ascertain what, if any, insurable interest its putative insurer has? Well, I mean, I think they do have a right to see what insurable interest that a person has. I mean, I'm not disagreeing with that. I'm just disagreeing with them trying to vitiate a deed that they're not a party to. Well, you would at least hope that summary judgment should be reversed so that you would get a trial on the issues. That's what I would hope for. And in closing, I cite the Hawkeye Security Insurance case, which is... I have one other case I just want to point out to the court. How do you respond to their suggestion that in order to rescind, there has to be a misrepresentation? But they're not claiming there's a misrepresentation. Their claim is that this wasn't an insurable interest. That's what their argument is. Shouldn't they have to establish that or at least proceed via the courthouse, just like they're suggesting that your client should have, perhaps? In other words, they can't simply rescind the policy or say, without someone, such as the court, saying it is. I think if they do a rescission, they have to go to court. I mean, I don't think they have the right to rescind. You'll have to only say it's not an insurable interest. It has to be decided. Let's lob another softball at you so your opponent can respond to it. Isn't this a matter of intent? Don't the courts ultimately hold that the creation of an equitable mortgage is a function of the intent of the parties? And isn't there a general principle that intent is not a good candidate for summary judgment? And particularly in this case, we have to weigh evidence to ascertain what the parties actually did mean in this relatively complicated conveyance context which your clients attempted to create. Maybe they succeeded. On the other hand, when he gives you something, he maybe spends a rebuttal. Ultimately, the question is whether we, as the judicial branch of government, ought to, and I'm not talking about informally, I'm using this as a legal category, whether we can lend our enforcement powers to uphold a transaction that smells bad. Well, I mean, I'd like to take it that we as a society have freedom to contract. Not to use the courts as their collaborators in enforcing a transaction that smells bad. I'm not giving, I'm not tagging it beyond using the word smell. If my law professor in law school used that term smells bad, I can use it too. But wait a minute. I want to talk about when she gave that deed to Tatum. Was any of this set out in the, yes? Yes, it was. I have on the record that on appendix page 13, was there one? Well, the entirety of the agreement is there. It's their agreement. Handwritten agreement. She signed it in front of the same notary that's notarizing the deed, whereby she would have three years to repay the $49,000 if they'd figured out what. Yeah, but on the other hand. Doesn't that say then right away this is an equitable mortgage? Well, she has the right to repurchase it. So, she's an excellent contractor. She has an option to repurchase. So, but you're disputing whether there was a mortgage, aren't you? Aren't you saying that? I'm disputing that the deed. It was just an outright order. It was a deed. It's the old ugly duckling. It smells and quacks and walks like one. Maybe that's what we should determine it to be. Well, I mean, that's up to you. Or maybe that was better left for a trial. Or what for a trial? I don't think it should come early to be disposed of. And in closing. On the other hand, if we look at a transaction which on its face may be viewed as being unconscionable, worth $11,000 or ultimately buys a profit that ultimately, ultimately this would cost your clients approximately $49,000 if there was a redemption. They, on the other hand, rejected $170,000 for the property. The disparity in value alone. Forgetting about the statute. The untutored background of the Vendee. And I think the record will bear that. I'm sorry. You know, of the Vendor. The experienced sophistication of the so-called Vendors, who have testified to their experience in their doing these kinds of deals. Under those circumstances, why should we lend them a hand here against anybody? Even though the carrier is a fortuitous interloper here, who is taking advantage of something that doesn't impact it nor benefit Merrill. But nevertheless, and I throw that out because that's your demon that your opponent's going to have to challenge. Should we participate in this case as a court by stepping into it? Well, first of all, it's not $11,000 in consideration. No, no, I told you there's 40. The difference is ultimately 40. She's going to pay $49,000 for which she gets approximately $39,000. But he gets to keep the property and sell it for $170,000, reject the $170,000. Well, I don't think he... Because he knows, his nose tells him that this lady is not going to be able to fork over $49,000 in three years. He knows it. Well, this lady... He said it. Well, the... And the fact is she didn't. Well, the agreement says... Yes, he did make the default in terms of the payment. They received $4,000. And what date would the owner have lost all interest, period, had it not been... It would have been June 28, 2008. And so at that point, she would not have had any redemption rights or any opportunity to do anything. Is that correct? That's part of the agreement between the parties. And as a consideration, your client would say I provided her the opportunity to sell the property to a third party. And in fact, if the party to sell did consummate three years afterwards, she did only actually cost her $10,000. There's a difference between the $39,000 and the $49,000. Correct. And she would be living there for $490 a month, which for a two-flat apartment is, I think, fair rent. Now, the question, I suppose, is whether if you view this as an equitable mortgage from the get-go, what kind of interest that $490 a month reflects. Because then he's not a landlord. She's the landlord. She's not paying rent. She's paying interest. She's paying $6,000 a year on an $11,000 loan, which later grows to $39,000 when he pays off the entire mortgage. Well, I mean, she still had her mortgage that was pre-existing. So that's $39,000. She pays interest on her. In addition to the rent, it's $39,000. She's paying $6,000 a year on a $39,000 advance or benefit. That's a lot of interest. That's a lot of interest. Well, you figure in $1,200 for property insurance, which is what they pay to all states, $1,200. My client had insurance on the property for four years. The real estate taxes are about $1,000 a year. I mean, when you start factoring all those costs, it's not only interest at all that she's paying. She's also paying the tariff costs. And $490 for a two-flat apartment, you know, I don't think that's reasonable. Well, it's not mixed with two. It's either rent or interest. It's not so. Well, I mean, the $490 payment, I don't know how you want to characterize it. If it's interest, we don't look to the number of units in the apartment. We look to the total amount of the advance on her behalf. Correct. So it's carrying costs for the note or the option to buy the property. And she was notoriously late in making the payment to my client before the fire. Gave her a five-day notice, and they were going to go to eviction court to have this matter, her possession rights resolved or terminated. Let me ask you one other thing here. If this is, in fact, an equitable conversion, do you think that the mortgage drawer would have been able to trace? If she exercised the right to convert, to redeem, if she paid the $49,000, would she become, in effect, segregated to the insurable coverage? Would she be able to demand, if the fire occurred within the three years, would she be able to demand the property or trace the burnt property to the insurance award? I know it's a hypothetical question, but it plays a role here. I understand. I mean, if she did tender the money for $49,000, and she became the owner of the property, without looking at the policy, but I think she would be able to step in the shoes of my client. Well, I don't think she'd be able to necessarily step in the shoes of your client, although that's a possibility. But would she be able to say, okay, you can't deliver the building to me? Even though she burnt it down, but that's beside the point. Let's assume some arsonist did that. She would be able to say, since you can't deliver the property to me, you should deliver the insurance payment to me. Trace it, as a trace. Well, I mean... You don't argue that, do you? I don't argue that. Because you don't argue it for good reason here, because it's burnt after a right to redeem expired. But I'm attempting to get something out of the posture with which we should, as a court, view the insurance carrier in this transaction. Well, I mean, the case that was cited in international insurance versus Navajo Park, the Supreme Court case, the Paris National Bank versus Boston insurance deals with taxable conversion. And in that particular case that was cited, the seller had insurance for Boston. The seller, in the case, was entitled to the remaining purchase price of the contract they had in the consulting contract. So, of course, there are two different interests that are covered. You know, the insurance company covers personality. It covers your mortgagee's interest, which is personality. In her case, the coverage would be for realty. And I don't know that the two mix. I don't know if they do either. But I'd be curious to hear both sides. Okay. Are you done? I'm done. For the time being. For the time being. I mean, there's one other thing I wanted to say, just to be clear. Hawkeye Security Insurance versus Ray, I just want to cite the facts in that case. That's a fact where the mother deed, the 70-year-old mother deeded the property to her son. The son reports a deed. Five days later, there's a fire. The mother makes a claim on the insurance policy. The insurance policy says you have no insurable interest because the deed was reported. So what happens is the daughter goes to court, gets the mother declared incompetent, gets her self-appointed guardianship, and then the daughter files a claim in a chance report to get the deed void because the mother was incompetent at the time of doing the deed. There's a default judgment, and then she makes a claim on the insurance policy. And there's a declaratory judgment in Hawkeye by the insurance company saying that there's no insurable interest. And the court in that particular case stated that the insurable interest in property doesn't depend upon title or possession of the real property, but whether one will suffer monetary loss by the destruction of it. I don't think the insurable interest issue is alive except in a very narrow context, which is whether your quitclaim deed should have any status at all in this transaction. And if not, then everything here is the rest of any basis for exercising any rights other than perhaps quantum vellabons, quantum unjust enrichment, etc., which has its own demons that you would then have to fight. Thank you. Good morning. Good morning. Mr. Coffey, why don't you begin with this? You say that the trial judge was not relying on the Mortgage Rescue Fraud Act to grant summary judgment, but that the Mortgage Rescue Fraud Act was essentially a codification of long-standing public policy. You say that there was always a principle that you cannot take deeds of security for mortgage. In what cases do you rely to support the notion that this was always a public policy? With respect, as a general matter, I think the case law over the years indicates that Illinois courts are always opposed to fraud, whether that's in the context of— Well, that's not the question. The question is more direct than that. You know, you're going to give us a general answer that this is a bad act, and consequently this fits in somewhere. Do you have specific cases, and they would have to be of relatively recent vintage, because the old cases all allow mortgages to be based on deeds. Do you have a case anywhere before the enactment of the Foreclosure Fraud Act that would prohibit the conveyance of a deed as a basis for establishing a security interest through a mortgage? I'm not aware of a case that is specifically on point for that. However, I believe if you read the—we keep calling it the Ethical Mortgage Statute. I think it's actually called the Constructive Mortgage Statute. The very language of the statute, every deed conveying real estate, which shall appear to have been intended solely as security in the nature of a mortgage, shall be considered as an ethical mortgage. There is language within that phrase I just read, which shall appear to have been intended only as security in the nature of a mortgage. So how does that help you? Yes. Does that suggest that there should have been a trial on whether or not this was an equitable mortgage? I don't believe it does, Your Honor. And the reason I don't think so is that phrase, which shall appear to have been intended only as security in the nature of, the burden to come forward with evidence to establish that it should be considered as an equitable mortgage. I'd like to comment on that, because I know how you finish it off in your brief. You seem to assume that clear and convincing evidence has to be established in the initial affidavit in opposition to the motion for summary judgment, and thereby destroying the notion that a judge shouldn't weigh evidence. As opposed so that basically you're saying, if he cannot establish the clear and convincing evidence from the get-go, even though he establishes an issue of fact, which can be established by evidence that is less than clear and convincing, that the judge could weigh evidence. I think that's a fallacy. Your Honor, I guess I, perhaps my brief wasn't clear enough. The motion for summary judgment is broad. It is incumbent on the plaintiff to then come forward with information to create an issue of fact or create a trial for question. They didn't do that. Their response to the summary judgment just says, all state is wrong. They don't come forward with an affidavit for Murray. They don't come forward with an affidavit. Well, where does all this information about the constellation of transactions that took place, starting with the fact that in March the Skrovets or Skrovo came forward, advancing $11,000, directed the Murrays to file a quit claim deed, and at the same time, during that same period of time, took a mortgage himself. Isn't this transaction by itself convoluted enough to create its own material issue of fact? I'm not sure that it does, Your Honor, because that testimony… Well, you're not sure that creates an issue of fact. You have to be sure. It does not, Your Honor. The information you're citing, that you are referring to, the testimony you're referring to, comes directly from Mr. Tatum's statement. That information is undisputed. The facts of the transaction here are very clear in terms of what happened, when it happened, and who did what. Those facts are undisputed. And those facts, again, to go back, establish a fraudulent… But if those facts go in both directions at the same time, doesn't that require evidence for the court to use to sort it out? Because the judge cannot use that until he becomes or engages, as the case may be, the trier's effect. It can't be that trier effect initially if it's a bench trial later on, perhaps. The judge certainly cannot weigh issues of fact. That is correct. But the facts that are presented to Judge McGrath in this case are undisputed. They are Mr. Tatum's own testimony. But how do you interpret those facts? Are you attempting, with your statement, to deny that issues of fact can be created by inferences and counter-inferences? No, questions of fact, sir. Well, doesn't the posture of this transaction raise conflicting inferences? I don't believe it does, Your Honor. Well, it would be nice if you were also right in the opinion in this case to simply say it does not. Well, what you are saying is that this transaction is worse than it smells. In other words, it's not that it just smells bad, it's a fraudulent transaction, and that the court will not participate in allowing this type of transaction to represent an insurable interest in this case. Yes, Your Honor. But what is fraudulent about this transaction? I suppose the easiest way to look at it, obviously fraud can come in the form of omission or in the form of representation. I think in this case, effectively, plaintiff swoops in, does not ever inform Ms. Murray or anybody that she has sufficient equity in her home to cover an $11,000 deficiency. He gets her two days before foreclosure. I won't tell her. No, but in fact she does, if I might. She does have that equity. That's been established by this record because he brought the mortgage for $11,000 plus $28,000 for $39,000 with a value on the property within a very short period of years of $170,000. That creates an issue of fact, doesn't it? How do you know that he never told her that she has equity in her home? I suppose there's nothing directly in the record, but I think it is beyond logical to say she would not have quit claims deep. If she only had two days, she might, because she certainly can't go get a mortgage two days from the deadline. There's nothing specifically in the record to indicate Mr. Pitten did not tell her that. However, to go back to Your Honor's question of what is fraudulent, she did not know, presumably she did not know that she had the equity. How do you know that? How do you know that? Because, Your Honor, if any of us was presented with this question, we would borrow against the equity. Two days from the deadline you could borrow? Your Honor, with all due respect, if it was any of us, I don't think it would have gotten to two days before the deadline. The reason Tatum times these transactions specifically for that reason. Get her two days before. He says in his own sworn statement, simply a few days or a week before she's going to lose the house. The question is whether a judge who catches wind of a case of being a sharp practice can summary judgment the case or have to have patience and wait for a trial before these facts emerge. Well, actually, let me just jump in there. This wasn't something that the court recognized. It was something the insurance company exposed. Isn't that correct? Isn't that what it was, the insurance company? Yes, Your Honor. But going further with that. The court bought into it. Yes, the court certainly did. But going further with that, how did the insurance company basically get to proceed? Is it because there's a summary judgment motion? Or doesn't the insurance company have to ask the court to declare that this transaction, I mean, the insurance company essentially did nothing. It just waited until Tatum filed this action to receive the proceeds from the loss. The insurance company denied the claim, indicating to Mr. Tatum that he had no insurable interest at the time of the loss. Subsequent to that, then, Tatum did file the instant action, and the company promptly filed. Incidentally, while you're on that subject, there is an issue here that has to be accounted for, and that is the delay of this insurance company in coming forward with a refund. While the Supreme Court, there's an early case on that says that they have to immediately pay, return the premium, and exercise the right of rescission. But that's an old, old case. A more recent Supreme Court case, however, does say it has to be done promptly. Was this done promptly? At the outset, Your Honor, I think it's worth noting, the cases I'm aware of specifically discuss rescission and return of premiums. Promptly. That's the word they use. They are specifically related to section 154 of the insurance code, which deals with misrepresentation. Yeah, but I don't see any difference. I don't see any difference. What would be your best case, Mr. Conte, to say that this transaction was fraudulent, it was void, there was no question of fact, and the trial court was correct in not putting its imprimatur on this kind of fraudulent conveyance or transfer or whatever you want to call it? What case would you cite to us to say that, based on these facts, there is no question of fact that this conveyance was a fraud, it was void, and the court should not participate in sanctioning that fraud? Your Honor, I see that, if I may, as a couple of different questions. I'd like to address each part of that. With respect to why is it a fraudulent conveyance and why is this particularly a fraudulent transaction, again, that's where the mortgage rescue fraud comes in. I'm not saying the MRFA was in effect at the time this happened, but I think the subsequent confirmation of the MRFA clearly indicates that legislature finds this conduct offensive. With respect to... Is that statutorily created fraud? I mean, is it common law fraud or is it a statutorily created fraud situation? I think it's a statutorily, I think the fraud existed and a cause of action for that conduct existed prior to enactment of the MRFA. However, I think the MRFA, if I recall correctly, it actually provides for a cause of action under the Consumer Fraud Act. So, even prior to enactment of the MRFA, I think you could have asserted a claim for either common law fraud, you could have asserted claims under the Consumer Fraud Act, potentially. The reason I ask that, you know, this kind of transaction has gone on for years prior to the creation of the Mortgage Fraud Act, and yet we can't find any cases which declare a derecorded in these circumstances is void. Your Honor, I think that, and that was going to, I think, the second part of Justice McBride's question. That is where I believe the court has to look to the general public policy. The Illinois courts will not have done fraud. And likewise, Your Honor, I think that is... But what is the fraud? That's what I want to get to. What exactly, if you leave out the act, what is the misrepresentation or the omissions, fraudulent omissions that are in the record that we can go to? I think the omissions are that what Tatum did is he would prey on someone that was days away from foreclosure, days away from losing their house, offer to help them out. He never discloses to them, A, that you have... But is that in the record? It was not disclosed. Is that in this record? Your Honor, I'd like to prove a negative. If I might, if I might, let's get a distinction clarified here as we discuss the problem. This may be the most illegal transaction in the world. The question is, when is the matter right for the court to make that determination? Can it be done as a matter of summary judgment on the basis, as a matter of law, that there are no genuine issues of material fact? Or must the court wait until the parties have their trial so that it could confirm its suspicions, one way or another, by weighing evidence? That's the question. It can be done at an early stage. An early stage meaning without weighing evidence. Again, Your Honor, I'm not... Without weighing evidence. Counsel, that's what a summary judgment demands. I understand that, Your Honor. I'm not sure there's contrary evidence to weigh. Inferences. The plaintiff was given an opportunity to present those inferences, and none were presented. To be weighed. Okay? So aren't those inferences available without an affidavit, just on the basis of what's in the record? Your Honor, the best answer I have for that is I think of what Judge McGrath did in this case as akin to a summary judgment in a negligence case, where there is no evidence that supports the cause. No, no. You're talking about Jewell v. Kimbrough. You're talking about giving a summary judgment where the court makes a determination that the plaintiff will not have evidence available to prove this case Was that the case here? Was there a determination that the plaintiff could in no way prove his entitlement? There was a determination that Mr. Kidd had no insurable interest, which would preclude his entire claim. How is that determination made? Is it made by applying the strict letters of the Mortgage Fraud Act that says 82% of the value? Supposing it was 81% of the value, are you indicating now that the court, a year before its effective date, should have anticipated an 82% requirement, supposing it were a 60% requirement? Even if you're right in terms of the tenor of the preexisting policy, is that tenor sufficiently exposed so that a court can, just by looking at this transaction, determine this meets without any issue of fact, without bringing any evidence, all of the criteria of fraud? Could you say that? Yes. The court can determine. Public policy is a matter of law. The court can interpret the insurance policy as a matter of law. The undisputed facts of the transaction come from Mr. Tatum's own statements. The court is empowered and arguably obliged to determine whether a transaction violates public policy of the state. If it does, if the court believes that the transaction violates public policy, based on the information available, then I think she can make that determination. All right. I'm not going to push you any further on that, Counsel. Other than the statute, well, first of all, your position would be that this type of transaction is not allowed under the statute that's in place now. True? True. Is it only because of the value that the mortgage has to be taken for a certain percentage, otherwise it's deemed? Or are there other things in the statute that you would point to that support the notion that this transaction is considered fraudulent today? Anything else you can throw? As I recall, there are three things in the statute. The value of the property is one, as Justice Gordon points out. I believe the statute also provides the distressed property, if you will, rescuer, for lack of a better term. Yes. The rescuer is not allowed to take a fee from a transaction without full disclosure to the seller. All right. We get that. What else? Would you say that the fee was when he went out the next week and got a $60,000 loan? Well, I would say the fee would come in, yes, the fee effectively would come in. Would you say that the disclosure of the fee to the client was something that could have been, that would have been an undisputed basis for being contrary to public policy? Is it that clear that the disclosure of fees, which the statute can legitimately enact, but that even without the statute, that would be a sufficient substantial indication of fraud? Yes, Your Honor, and that goes back to Justice House's question before in terms of what specifically was the fraud. There was the omission of telling her, or failing to tell her, about the amount of equity she had in her home, and in more detail. I submit, counsel, that for the life of me, I cannot at this point envision a failure to disclose a fee to a party, which we're not dealing here with fiduciaries, as a basis for fraud outside of any statutory provision or enactment requiring it. What was the third factor you were going to mention? I apologize, Your Honor. Equity. Sufficient equity to pay? Well, you said percentage? Yes, the percentage of equity. The fee, and what's the third? All of which make this, in today's world, in violation of the statute. Yes, Your Honor. All right, what is the third? Sorry, you're not a presidential candidate. We're just a third party. My only point is this. Your argument is that if the legislature has told us and said that this kind of transaction is not allowed under the statute of our state, that that is a clear and valid indicator that when the court said that this transaction was void, was against public policy, that the statute only reinforces what she did in this case in granting summary judgment. Yes, Your Honor. Now, do you think that at the same time the insurance company should be allowed to benefit from that without a full-blown trial? Are the facts such that the real culprit here, well, that the insurance company is benefiting from someone else's transaction even when the person who took out the policy has been paid all this time, should they not have the benefit of a trial to be able to fully explore the transaction in this case? Your Honor, starting with the premise that the transaction is in balance as a matter of law. Wait, wait. In balance as a matter of law means no material issues of fact, no evidence has to be weighed, either overt evidence or inferences to be drawn from the evidence, has to be weighed for the court to conclude here that this is an invalid transaction of a nature that would make it contrary to public policy for this court to intervene. You're asking a lot. I appreciate that, but as I understood the Justice's question, I was starting with that as the baseline. Assume that is an invalid transaction. So I understood the Justice's question. It was, should the insurer subsequently be able to benefit from that determination? Well, that's a standing question. I don't think it's probably that. You're saying if it's a fraud, the court would not sanction this. And because it is a fraud, which is what your position is, that it makes little difference that the insurance company is indicating that the insurance had no insurable interest because a fraud was committed in the first instance. Yes. See, what ordinarily this transaction would teeter on would not be the question of fraud, but the question of unconscionability. Because it's a transaction that has legal structure of sorts, which has… Isn't unconscionability really just a cousin of the term? I think… It's a transaction of some different roles, contracts of adhesion, relative superiority of the parties, dealing in this case. But okay, it's not… It's a misrepresentation. Yeah, yeah. Well, what misrepresentation is that? I'm not making it out of misrepresentation. The insurance company doesn't claim this is a misrepresentation. A misrepresentation. Well, if I could step back. As I understood a lot of the questions regarding misrepresentation… It's not a material misrepresentation. Well, wait, if I could step back. Are we talking misrepresentations made to Ms. Murray or made to the insurance company? No, to the insurance company. Not… Correct. Our decision is not predicated on a misrepresentation made to Allstate. What about to Ms. Murray? That was how I understood Your Honor's question earlier. What would misrepresentations or omissions look like to Ms. Murray on paper? Right. Right. And I believe those were… That was, again… There are no obvious ones here. They may not have made full disclosures, but there's no indication here that they misrepresented. Your Honor, I think it's a fine line that we're getting to. No, no, no. Because the complete disclosure is owed by a fiduciary, not by strangers. Your Honor, Mr. Tatum effectively injected himself as a fiduciary. Oh, so we should find that he's a fiduciary? We don't make those findings loosely, counsel. I understand you don't define them loosely, and I'm not suggesting… The question is, when is this case ripe for determination? And summary judgment is a thorough process. You can't weigh evidence. I understand. I don't believe Judge McGrath was weighing evidence. I believe Judge McGrath's decision was predicated on the evidence before her. Counsel, having been a trial judge myself, there is a bit of a difference in the culture. As a trial judge, you might indulge more in a coup de grace or cases that you deem to be a lost cause. I don't feel we have to be guarded against that, because we cannot view a case as being ultimately fatal to itself and therefore abort it prematurely. I appreciate the Court's concern. To go back very briefly, I'm not suggesting the Court necessarily find Mr. Tatum a fiduciary as a matter of law here. What I am saying is, when you look at the nature of this transaction, as Your Honor said before, it looks like a duck and walks like a duck. He preyed on someone who was days away from losing their home with the promise of, I will help you. You will not lose your home. I will help you do that. He effectively injected himself as a fiduciary in this transaction. This is not an arms race. This is not… You don't know that. He came basically as a carpetbagger. There is no indication here that he insinuated himself into the confidence of Ms. Murray. He came and said, look, we know you're a few days away from foreclosure. We'll bail you out, but give us the money. And in desperation, she did, not full well knowing what her rights were. Correct. And subsequent to that… You speculate, not knowing what her rights are. Correct. Speculate. I'm glad you injected it. You don't necessarily lose on a trial on the issues. It's a question of when more so than whether. Presumably. Presumably. Presumably. I'm not writing any obituary. I think we understand.  Nothing to add, Your Honor. If there was a bit of a massacre attempt here on its face, it was unintentional. We just like to distill the aspects of the case so that we can make the right decision. I can speak for myself and I think for all my colleagues. No one has bottom-lined this case at this point.  Thank you, Your Honor. I just want to brief on this particular matter about the fraud issue. What exactly was Ms. Murray experiencing? She was going to lose her home anyway in a sheriff's jail, 30 to 810. And she, my client, allowed her to live there for over three years after the fact. Well, the MSW doesn't seem to care. Ms. Murray, where the evictions or foreclosures were, people have been, they've been allowed to stay in their homes for up to two years. I know the foreclosures are tough. I mean, that's common knowledge, that the foreclosures were not forcing the eviction of anyone out of their homes. We're not an ecclesiastical court. We're dealing with a legal and equitable concept of public policy that we're trying to determine on a juridical basis. We're not sitting here as private parties evaluating the morality of one party or one transaction. That's not what the statute says. This policy does allow for rescission based upon fraud, doesn't it? Yeah, it does. All right. And, you know, like... What does the court, or what does the policy provide in terms of action in that instance? Since they said this wasn't based on misrepresentation. What does the policy, does the policy require them to return premiums or act in a certain fashion or do it within a certain time frame? Not that I know of. I mean, I've read the policy a few times. Not that I remember off the top of my head what it requires. Well, let me ask you this, Mr. Larson. Would you agree that under the current statute of mortgage rescue fraud act, as it's called, that this transaction would clearly not meet the test, that it would automatically be in violation of the statute as we speak today? As we speak today, it would be in violation of the statute, and the statute would give a remedy to the homeowner. And a candidate for a summary judgment under the statute. Under the statute, correct. I would submit, you know, and I've put it in my briefs, that all states wouldn't be a party that would be able to use the premium. Well, if it is a violation of the statute, though, I would take that as separate. If it is a violation of the statute, would you agree that it would be some form of fraud so that an insurance company could challenge the transaction?  I have one question for you that I probably should have asked earlier. And I may, with the plea of my colleagues and the parties, ask for even an opportunity to respond. If we should, in this case, say that this fails, that summary judgment is not appropriate here based on equitable conversion, can the summary judgment remain partially in effect with respect to the full value of the house, or is summary judgment improper here all the way? If we take equitable conversion as being an issue of fact, that frankly gives your client an insurable interest of $11,000, maybe $14,000, because it's limited to the amount of his interest. On the other hand, if summary judgment is inappropriate as to whether he's the owner, then he has the full rights to the full value of the property. Now, do we have, what is the issue of fact with regard to his claim that he's the owner? Should summary judgment here be denied only on the issue of equitable conversion? Well, I submit that the deed is primary case evidence of the correctness. In order to overcome a deed, you have to expect clear and convincing evidence and the equitable mortgage. But what about his own statement, sworn statement, that it was designed to allow her to redeem the property? What about his own statement that the property was worth? Well, I mean, you're asking two different questions. I mean, about the property's worth, I mean, normally what a homeowner says the property's worth is not, unless you're a trained appraiser or a realtor or someone who has clear evidence, it's not really admissible at a time before a trial. Normally, I mean, from the pay bill or sale or something to that effect, it would be denied. What's the issue of fact on the question of whether he's the absolute owner of this property? What issue of fact is there? The issue of fact is the fact that the quitclaim deeds aren't the surrounding facts that are not in dispute sufficient to negate any absolute ownership. Well, I think in order to remove or vitiate a deed, someone has to go into court and move or have it declared an equitable mortgage. If you look at all the cases that cited about equitable mortgages, even in a court setting, in a chance report, where they're pleading that the court should find the next one. Wasn't there a full hearing held on those circumstances of the transaction and what was expected? There was no full hearing at all on the transaction before Judge McBride. No, it was McBride. McBride, I'm sorry. I apologize. Is there any suggestion, though, that Justice Brekker clearly flushed out an equitable mortgage at least as opposed to him being the owner? What does that little paper say that they had? Well, I mean, that paper... Does that at least suggest, there's no question, but there's a fact that there was some kind of a purchase? Well, to me, that paper submits that there's an option to repurchase the property. Yeah. And to me, that is, an option is for three years, and that's, people are free to contract. If you take that position, can't you also say that this was a fraudulent transaction because he got a property that was worth over $100,000 for a mere $11,000? Well, about $30,000. $39,000. $39,000. $39,000. I'm sorry. Well, but in my particular circumstance, I mean, like, when they bought Manhattan from the Indians, they just gave me some deeds and some stuff. Wait, you don't want to go there, do you? I'm just giving you an example. You know, like, I don't want to go there, but... But Justice Brekker, two days after the fiduciary session... It took a lot of generals like General Custer to enforce that Manhattan transaction in the ultimate. I understand, yeah. But to a person who only has two days left on the period of redemption, the sale for $49,000 was better than nothing. It is. She was going to lose everything. Yeah, but she probably could have worked her way out of this one, in retrospect, because we know that that house was worth a lot more than what she had to come up with to avoid the foreclosure. Because he got a $65,000 loan within days, just days. Because he had the credit, she didn't. I mean, unfortunately, that's a fact of life. Do you need two minutes to respond to this? That was not a rebuttal type of question. You didn't have a chance to talk to it. Well, I think you might have the team that were aware of both sides. All right, gentlemen, in that case, we will take this case under advisement. I might add that your briefs were all very helpful, to the extent that this is an issue that could be determined from briefs alone, and your arguments were very effective. They've given us a lot to think about, and hopefully we'll have a decision for you in due course. Thank you.